Robert J. McKennon (SBN 123176) *rm@mckennonlawgroup.com*
Scott E. Calvert (SBN 210787) *sc@mckennonlawgroup.com*
Nicholas A. West (SBN 309003) *nw@mckennonlawgroup.com*
**McKennon Law Group PC**
20321 SW Birch Street, Suite 200
Newport Beach, California 92660
Phone:  949-387-9595  |  Fax:  949-385-5165

Attorneys for Plaintiffs, THEODORE RAPP and CHRISTY RAPP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| THEODORE RAPP and CHRISTY RAPP,<br><br>                              Plaintiffs,<br><br>v.<br><br>HENKEL OF AMERICA, INC.; and DOES 1 to 10, inclusive,<br><br>                              Defendants. | Case No.:<br><br>Action Filed:<br><br>Trial Date: None<br><br>─────────────────────────<br><br>**COMPLAINT FOR RECOVERY OF ERISA PLAN BENEFITS; ENFORCEMENT AND CLARIFICATION OF RIGHTS; BREACH OF FIDUCIARY DUTY; PREJUDGMENT INTEREST AND ATTORNEYS' FEES**<br><br>[Filed Concurrently With:<br> -  Summons;<br> -  Certification and Notice of Interested Parties; and<br> -  Civil Case Cover Sheet] |



## THE PARTIES

1.      Plaintiffs Theodore Rapp and Christy Rapp ("Plaintiffs") are individuals who, at all times relevant to this action, were residents of the State of California, residing in Fullerton, California, which is in the County of Orange.  At all times relevant to this action, Mr. Rapp was a participant and a beneficiary, as defined by the Employee Retirement Income Security Act of 1974 ("ERISA") Section 3(7), 29 U.S.C. Section 1002(7) and Section 3(8), 29 U.S.C. Section 1002(8), in the employee welfare benefit plan established by Mr. Rapp's employer, The Dexter Corporation ("Dexter"), whose obligations were subsequently assumed by the Henkel Corporation ("Henkel") and its subsidiaries (the "Plan").  Ms. Rapp is Mr. Rapp's former wife and has a community property interest in any of Mr. Rapp's pension plans relevant to this action.

2.      Henkel of America, Inc. ("HOA") is a subsidiary of Henkel, with its primary place of business in Connecticut and incorporated under the laws of Delaware.  HOA is the Plan Administrator for the Plan.

3.      The true names and capacities, whether individual, corporate, associate or otherwise, of the Defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiffs at this time.  Plaintiffs sue DOES 1 through 10 by fictitious names and will ask for leave to amend this Complaint to show the true names and capacities of DOES 1 through 10 when ascertained.  Plaintiffs sue DOES 1 through 10 as principals and/or agents, servants, attorneys and employees of such principals, and all the acts performed by them were within the course and scope of their authority and employment.  Plaintiffs are informed, believe and thereupon allege that each of DOES 1 through 10 is legally responsible in some manner for the events

Case No.: 

1 and happenings referred to herein, and directly and proximately caused the damages
2 and injuries to Plaintiffs as hereinafter alleged.

3

4 **JURISDICTION AND VENUE**

5

6       4.      ERISA Section 502(a), 29 U.S.C. Section 1132(a), authorizes
7 Plaintiffs' claims for relief, and this Court has subject matter jurisdiction over
8 Plaintiffs' claims pursuant to ERISA Section 502(e) and (f), 29 U.S.C. Section
9 1132(e) and (f) and 28 U.S.C. Section 1331.

10

11       5.      Venue lies in the Central District of California, Southern Division
12 pursuant to ERISA Section 502(e)(2), 29 U.S.C. Section 1132(e)(2), because
13 Plaintiffs reside in this district, some of the breaches alleged occurred in this district
14 and the ERISA-governed plan at issue was administered in part in this district.
15 Venue is also proper pursuant to 28 U.S.C. Section 1391(b) because a substantial
16 part of the events or omissions giving rise to Plaintiffs' claim occurred within this
17 district.

18

19 **FACTUAL BACKGROUND**

20

21       6.      Dexter employed Mr. Rapp from June 1974 through September 1986.

22

23       7.      Throughout Mr. Rapp's career at Dexter, Dexter employed him in a
24 variety of capacities.  At the time of his resignation from Dexter, Mr. Rapp held the
25 position of Product Manager, Coating Powders and General Purpose Molding
26 Compounds and Formulated Liquids.

27

28

Case No.:



8.    Dexter maintained a retirement pension plan for its employees (the "Dexter Plan").

9.    Through his employment at Dexter, Mr. Rapp acquired a deferred vested pension benefit under the Dexter Plan.

10.    Mr. Rapp received a letter dated January 25, 1988 from Dexter's Director of Human Resources entitled "Notification of Pension Rights at Termination" (the "Notification of Benefits").  The Notification of Benefits explained that Mr. Rapp was entitled to pension benefits under the Dexter Plan when he attained the age of 65.  The Notification of Benefits stated that Mr. Rapp's first day of normal retirement began on December 1, 2006.

11.    In July 2000, after Mr. Rapp terminated employment with Dexter, Loctite Corp. ("Loctite"), an affiliate of Henkel, acquired certain lines of business from Dexter.  Employees of these businesses participated in the Dexter Plan.  The Dexter Plan was transferred to Loctite as part of the acquisition.  Following the acquisition, a portion of the Dexter Plan (representing the benefits of employees of the coatings business who did not become employees of Henkel) was spun off to another company (not affiliated with Henkel), and the remaining portion of the Dexter Plan was assumed by Henkel and was renamed The Loctite/Dexter Pension Plan (the "Loctite/Dexter Plan").

12.    Effective April 1, 2001, the Loctite/Dexter Plan was merged with and into the Plan, and all remaining liabilities and assets of the Loctite/Dexter Plan were transferred to the Plan.

Case No.:  

13.     The Loctite/Dexter Plan provides that "Each Eligible Employee who was a Participant in the Plan on the Effective Date of this restated Plan shall continue as a Participant in the Plan."

14.     Effective April 1, 2001, Loctite and Henkel merged the Loctite/Dexter Plan into a separate retirement plan maintained by Henkel (the "Plan").  Loctite and Henkel merged the assets and liabilities of the Loctite/Dexter Plan with the Plan.

15.     The Plan provides in relevant part:

Effective April 1, 2001, the Loctite/Dexter Retirement Plan (the "Dexter Plan") was merged into the Plan. If you continue in employment covered by the Plan after March 30, 2001, your benefit is the sum of your Dexter benefit and your benefit earned under the Plan's formula, as described below. Effective March 31, 2001, your benefit service for purposes of the Dexter Plan benefit formula was frozen, which means you will no longer earn benefits for additional years of service under the Dexter Plan formula.  Your Dexter pension benefit (based on your years of benefit service under the Dexter Plan as of March 31, 2001) will, however, be adjusted using your final average earnings at retirement.

16.     HOA serves as the Plan Administrator for the Plan.

17.     Loctite purchased the portions of Dexter that employed Mr. Rapp.  As such, the Loctite/Dexter Plan, and the Plan thereafter, assumed responsibility for the payment of Mr. Rapp's pension benefits under the Dexter Plan.

Case No.:



18.     Mr. Rapp never received any benefits from the Plan or from any of its predecessors-in-interest, including the Loctite/Dexter Plan and the Dexter Plan.

19.     On April 21, 2017, Mr. Rapp submitted a "Claim Initiation Form" to the Henkel Benefits Service Center.  In doing so, Mr. Rapp sought the pension benefits he acquired while working for Dexter.

20.     In a letter dated July 11, 2017, Henkel denied Mr. Rapp's request for benefits (the "Claim Denial").  The Claim Denial first stated that Henkel had no record of Mr. Rapp's employment with Dexter.  It then stated that "when Henkel acquired Dexter in 2001, a list was compiled of all Dexter employees whose outstanding pension benefit obligations were transferred to Henkel.  Henkel has confirmed that you are not on this list." (The list is hereinafter referred to as the "Dexter List.")

21.     Between July 27, 2017 and November 29, 2017, Mr. Rapp, through his counsel, submitted a series of letters to the Henkel Committee, care of Claims and Appeals Management.  Throughout the course of those letters, Mr. Rapp appealed the denial of his benefits.  Mr. Rapp argued that the Notification of Benefits served as salient proof of his entitlement to benefits under the Plan.  He further argued that when Henkel and its subsidiaries purchased Dexter, Henkel assumed an obligation to maintain all relevant records for his pension benefits.  Mr. Rapp argued that Henkel carried the burden of establishing that Mr. Rapp was not entitled to his benefits after he provided proof that Dexter had acknowledged his entitlement to a pension.

22.     In his communications with Henkel, Mr. Rapp asked Henkel numerous times before he filed his appeal of the Claim Denial to explain to us how the "Dexter

Case No.:



List" was prepared.  Pension benefits cannot be forfeited except under very specific circumstances.  When one company acquires another company with a pension plan, it must prepare a list of the pension Plan participant who are having their benefits transferred.  Mr. Rapp asked but was provided no information about how the Dexter List was prepared, how those on the Dexter List made in onto to the list and, most importantly, why he was left off the Dexter List.  Despite his many inquiries, Mr. Rapp was never provided any plausible reason as to why he was left off the Dexter List.

23.     In a letter dated March 16, 2018, the Henkel of America, Inc. Benefit Plans Administrative Committee denied Mr. Rapp's appeal (the "Denial of Appeal").  The Denial of Appeal stated that the Committee acknowledged that Mr. Rapp worked for Dexter and had been entitled to pension benefits under the Dexter Plan at some point in time.  It further stated that because the Dexter List did not include Mr. Rapp's name, Henkel had no record of Mr. Rapp's entitlement to pension benefits under the Plan and therefore Mr. Rapp's appeal was denied.

24.     The Denial of Appeal further explained that Mr. Rapp had completed Henkel's internal appeals process and that "Mr. Rapp now has the right to bring a civil action under Section 502(a) of ERISA in federal court if he chooses to further pursue this claim. . . ."

Case No.:

## FIRST CLAIM FOR RELIEF

To Recover Benefits, Attorneys' Fees, Pre-Judgment and Post-Judgment Interest

under ERISA Plan – 29 U.S.C. sections 1132(a)(1)(B), (g)(1)

(Plaintiffs against HOA and Does 1 through 10)

25.     Plaintiffs incorporate by reference each of the foregoing paragraphs of this complaint, as though fully set forth herein.

26.     ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B), permits plan beneficiaries, like Plaintiffs, to bring a civil action to recover benefits due to them under the terms of a plan, to enforce their rights under the terms of a plan and/or to clarify their rights to future benefits under the terms of a plan.

27.     ERISA Section 204(g), 29.U.S.C.  Section 1054(g) prohibits decreases in accrued benefits as a result of plan amendments.  *See also* 26 C.F.R. 1.411(d)-4.

28.     Dexter employed Mr. Rapp, and, through his employment, Mr. Rapp acquired a benefit under the Dexter Plan.

29.     Loctite, a subsidiary of Henkel, assumed the obligations to Mr. Rapp under the Dexter Plan when Loctite purchased portions of Dexter.  This assumption resulted in the Loctite/Dexter Plan.  Henkel and Loctite merged the assets and obligations of the Loctite/Dexter Plan with the Plan effective April 1, 2001.

30.     Mr. Rapp has never received any benefits from the Plan or any of its predecessors in interest.

Case No.:



31.     Plaintiffs have been entitled to pension benefits under the Plan in the amount of at least $337 a month since December 1, 2006.  As of June 29, 2018, Defendants owe Plaintiffs at least $46,843 in back pension payments in addition to all appropriate interest.  Plaintiffs are also entitled to at least $337 per month starting July 2018 and each month thereafter.  By denying Mr. Rapp's claim for pension benefits, and by related acts and omissions, Defendant HOA violated, and continues to violate, the terms of the Plan and Plaintiffs' rights thereunder.

32.     The proper standard of review is de novo, as HOA funds the plan and does not have valid discretionary authority pursuant to California Insurance Code Section 10110.6.  De novo review means that the court "considers the matter anew, as if no decision had been rendered."  *Lin v. Metro. Life Ins. Co*., No. C 15-2126 SBA, 2016 WL 4373859, at *5 (N.D. Cal. Aug. 16, 2016) (quoting *Dawson v. Marshall*, 561 F.3d 930, 932–33 (9th Cir. 2009)).

33.     HOA failed to follow ERISA's claims processing requirements, Department of Labor Regulations and failed to conduct a "full and fair review" of the claim denial, as required by 29 U.S.C. Section 1133(2).  Thus, even if the Plan vests discretion in HOA to make benefit determinations, no deference is warranted with regards to HOA's handling of this claim.  *See Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1465 (9th Cir. 1997); *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1105 (9th Cir. 2003) ("When decisions are not in compliance with regulatory and plan procedures, deference may not be warranted.").

34.     Plaintiffs are informed and believe, and on that basis allege, that HOA is both a funding source and claims fiduciary of the Plan, and thus has a structural conflict of interest.  Therefore, even assuming that the Plan vests any discretion in

-9-

Case No.:

HOA to make benefit determinations, review of such determinations by this Court must take into consideration all relevant facts and circumstances in determining if there is an abuse of discretion.

35.    A "prudent person" standard is imposed on ERISA fiduciaries.  *See* 29 U.S.C. § 1104(a)(1)(b).  A "fiduciary" is also under a duty of loyalty and care to the participants and beneficiaries of the Plan.  *See* 29 U.S.C. § 1104(a)(1).  Under ERISA: (1) a fiduciary must discharge its duties solely in the interest of plan participants and beneficiaries and for the exclusive purpose of providing plan benefits to them; (2) a fiduciary must act with care, skill, prudence and diligence; and (3) a fiduciary may not act in any capacity involving the plan, on behalf of a party whose interests are adverse to the interests of the plan, its participants, or its beneficiaries.  HOA's handling of Mr. Rapp's claim for pension benefits falls far short of these standards.

36.    HOA denied Mr. Rapp's request for his pension benefits because of a clerical error, because Mr. Rapp's name was not on the Dexter List.  HOA acknowledged that Dexter had employed Mr. Rapp and that he had acquired an interest in the Dexter Plan.  HOA had evidence before it in the form of Mr. Rapp's personal statement that Plaintiffs had never received any benefits from the Dexter Plan or from any of its successor-in-interest plans.  HOA had no evidence that Plaintiffs had received any benefits from the Dexter Plan or from any of its successors-in-interest plans.  It was HOA's obligation to maintain the records establishing that Mr. Rapp had received his benefits, yet HOA erroneously denied Mr. Rapp his pension benefits when he demanded the payments to which he was entitled.  *See* 29 U.S.C. § 1059(a)(1) (An employer is required to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees."); *Sec'y of Labor v. Doyle*, 675 F.3d



187, 202 (3d Cir. 2012) ("Rather, ERISA § 404(a) incorporates the fiduciary standards of trust law, of which several are relevant here.  In particular, a trustee has a duty to maintain financial records[.]") (internal citations omitted).

37.     For all the reasons set forth above, the decision to deny Mr. Rapp's claim for pension benefits was arbitrary, capricious, wrongful, unreasonable, irrational, incorrect, contrary to the evidence, contrary to the terms of the Plan and contrary to law.  HOA improperly denied this claim, as the evidence shows its denial decision was not only incorrect but arbitrary and capricious.  Furthermore, HOA's denial decision and actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Ins. Co*., 458 F.3d 955 (9th Cir. 2006) and *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).  HOA's denial of Mr. Rapp's claim was incorrect and improper, and an abuse of discretion based upon the evidence discussed herein.

38.     Alternatively, based upon all of the evidence discussed above, Plaintiffs have met the burden of establishing, on a de novo review, that Plaintiffs are entitled to unpaid pension benefits under the Plan in the amount of at least $46,843 plus interest and at least $337 per month each month for July 2018 and thereafter.  Plaintiffs have also met the burden of establishing, on de novo review, that HOA's denial of Mr. Rapp's claim was incorrect and improper.

39.     As a direct and proximate result of the denial of benefits, Plaintiffs incurred attorneys' fees to pursue this action, and are entitled to reimbursement of these fees pursuant to 29 U.S.C. Section 1132(g)(1).

40.     A controversy now exists between the parties as to whether Plaintiffs are entitled to pension benefits as defined in the Plan.  Plaintiffs seek a declaration

Case No.:



1   from this Court that Mr. Rapp possesses a vested benefit in the Plan, and that

2   Plaintiffs are therefore entitled to benefits in the unpaid amount of at least $46,843,

3   calculated as of June 29, 2018, plus interest and a payment of at least $337 per

4   month thereafter, beginning in July 2018, as Mr. Rapp is a designated beneficiary of

5   the Plan.  In the alternative, Plaintiffs seek a remand to the claims administrator for

6   a determination of Mr. Rapp's claim consistent with the terms of the Plan and

7   applicable case law.

8

9                           **<u>SECOND CLAIM FOR RELIEF</u>**

10          Breach of Fiduciary Duty and for Equitable Relief Including Waiver,

11      Estoppel and Surcharge, and for Attorneys' Fees, Pre-Judgment Interest, under

12               ERISA Plan – 29 U.S.C. Sections 1132(a)(3)(B), (g)(1)

13                    (Plaintiffs against HOA and Does 1 through 10)

14

15          41.    Plaintiffs incorporate by reference each of the foregoing paragraphs of

16   this complaint, as though fully set forth herein.

17

18          42.    Plaintiffs assert this Second Claim for Relief seeking equitable relief in

19   the alternative to their First Claim for Relief seeking the payment of Plan benefits,

20   which is permitted under *Moyle v. Liberty Mutual Retirement Benefit Plan*, No. 13-

21   56330, 2016 WL 2946271, at *11, 14 (9th Cir. May 20, 2016) (holding ERISA

22   claimants "may pursue simultaneous claims under 29 U.S.C. § 1132(a)(1)(B) and

23   § 1132(a)(3)" in the alternative).

24

25          43.    ERISA Section 502(a)(3), 29 U.S.C. Section 1132(a)(3)(B) permits

26   plan participants or beneficiaries like Plaintiffs to bring a civil action against a

27   fiduciary to obtain "other appropriate equitable relief," including the equitable

28

-12-



remedies of waiver, reformation, estoppel and "surcharge" (i.e., make whole relief), in order to redress the fiduciary's violations of ERISA or an ERISA plan.

44.     At all times relevant herein, a fiduciary relationship existed between Plaintiffs and HOA.  HOA is an ERISA plan fiduciary.  HOA funded the employee welfare benefit Plan and HOA administered claims and benefits provided to HOA employees and their beneficiaries, including Plaintiffs, to whom HOA acquired an obligation pursuant to the Plan's merger with the Loctite/Dexter plan.  HOA is the claims administrator for Mr. Rapp's pension benefits.  HOA has and at all relevant times had the authority to grant or deny claims, including Mr. Rapp's claim for pension benefits.  HOA also has the authority to determine eligibility and, in doing so, acts as the Plan and claims administrator with respect to the Plan.

45.     Because HOA exercises decision-making authority for claims filed under the Plan, it acts as a fiduciary in the claims handling process and in the administration of the Plan.  Thus, HOA acted as an ERISA fiduciary in connection with the Plan and Mr. Rapp's claim.  *See Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033 (9th Cir. 2000) ("When an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA 'fiduciary' under 29 U.S.C. § 1002(21)(A)(iii)."); *see also* 29 U.S.C. § 1002(21)(A)(i), (iii) ("a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan").

46.     HOA owed Plaintiffs and all Plan participants a duty to hire, train and supervise its personnel to anticipate confusion over eligibility for Plan benefits and

Case No.:



coverage.  *See Kenseth v. Dean Health Plan, Inc*., 610 F.3d 452, 471–72 (7th Cir. 2010).  HOA had an obligation to have safety measures in place to guarantee that pensioners did not lose their benefits when HOA proceeded to acquire obligations under retirement plans via the purchase of companies by Henkel and its subsidiaries. HOA breached its fiduciary duty to Plaintiffs by failing to maintain adequate records to establish that Plaintiffs had not received a payment under the Plan, or its predecessors-in-interest, and that in fact they were entitled to benefits.  *See* 29 U.S.C.  § 1059(a)(1) (An employer is required to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees."); *Sec'y of Labor v. Doyle*, 675 F.3d 187, 202 (3d Cir. 2012) ("Rather, ERISA § 404(a) incorporates the fiduciary standards of trust law, of which several are relevant here.  In particular, a trustee has a duty to maintain financial records[.]") (internal citations omitted).

47.     The Code of Federal Regulations establish minimum requirements for employee benefit plan procedures pertaining to claims for benefits for plan fiduciaries such as HOA to follow.  29 C.F.R. Section 2560.503-1(b)(2), (5) requires a reasonable claim procedure to contain administrative processes and safeguards designed to ensure and verify that benefit claim determinations are made in accordance with plan documents.  It was enacted to implement ERISA's statutory declaration of policy, 29 U.S.C. Section 1001(a), that adequate disclosure be made and safeguards be provided with respect to the administration of ERISA plans because of the lack of knowledge of ERISA plan participants and beneficiaries like Plaintiffs.  HOA's failure to construct a system to ensure that coverage is properly in place and adequate records are maintained to guarantee that Plan participants and beneficiaries are able to receive their pension benefits violated the requirement that safeguards be in place to ensure adequate administration of the Plan, and that benefit

Case No.:

1    claim determinations are made in accordance with the Plan documents.  This ERISA

2    violation constituted a breach of HOA's fiduciary duties owed to Plaintiffs.

3

4       48.     ERISA plan participants and beneficiaries can assert a claim against

5    fiduciaries like HOA for breach of fiduciary duty under 29 U.S.C. Section

6    1132(a)(3), and the available remedies to redress those breaches and ERISA

7    violations include equitable remedies like surcharge, estoppel, waiver and

8    reformation.  *See McCravy v. Metropolitan Life Ins. Co*., 690 F.3d 176, 180 (4th Cir.

9    2012) ("But with Amara, a striking development, the Supreme Court expanded the

10   relief and remedies available to plaintiffs asserting breach of fiduciary duty under

11   Section 1132(a)(3) and therefore seeking make-whole relief such as equitable relief

12   in the form of surcharge.") (internal brackets and quotes removed).

13

14      49.     HOA's breach of its fiduciary duties and other ERISA violations

15   described above proximately caused the denial of Mr. Rapp's benefits under the

16   Plan in the amount of at least $46,843, calculated as of June 29, 2018, plus interest

17   and a payment of at least $337 per month thereafter, beginning in July 2018, and

18   Plaintiffs are therefore entitled to compensatory damages and/or pension benefits of

19   these amounts under the equitable remedies of waiver, estoppel and surcharge,

20   among others.

21

22      50.     As a direct and proximate result of HOA's breach of its fiduciary

23   duties, Plaintiffs have been required to incur attorneys' fees to pursue this action,

24   and are entitled to reimbursement of these fees pursuant to 29 U.S.C. Section

25   1132(g)(1).

26

27

28

Case No.: 

*Waiver / Estoppel Remedy*

51.    In addition, HOA waived its right to assert lack of coverage because HOA confirmed coverage through their administrative appeals process.

52.    When an insured files a claim for benefits, the insurer issuing a denial must provide "[s]pecific reference to the pertinent plan provisions on which the denial is based," and "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." *Boyd v. Aetna Life Ins. Co.*, 438 F.Supp.2d 1134, 1156 (C.D. Cal. 2006).  The purpose of this notice requirement is so the claimant understands what he or she must do to obtain the benefit and to enable the claimant to properly address the issues and protest if a plan persists in its improper denial.  *Id.; see also Juliano v. Health Maint. Org. of NJ, Inc*., 221 F.3d 279, 287 (2d Cir. 2000).  Further, the Ninth Circuit ruled that an insurer waives arguments if it fails to raise them at the administrative level.  *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 974 (9th Cir. 2006) (a change in reasoning in a final decision precludes the participant from responding at the administrative level and "contravenes the purpose of ERISA").

53.    HOA waived or is estopped from arguing that Dexter did not employ Mr. Rapp as it conceded this point in the administrative claim process.  HOA has further waived or is estopped from arguing that Mr. Rapp did not have an interest in the Plan and was not a Plan participant who had vested pension benefits under the Plan.  By virtue of the Notification of Benefits which explained that Mr. Rapp was entitled to pension benefits under the Dexter Plan when he attained the age of 65, HOA, as the successor-in-interest to Dexter and the Dexter Plan, is estopped from

Case No.: 

denying that Mr. Rapp is and was a vested Plan participant who was entitled to his pension benefits under the Plan.

54.     HOA waived its right to argue that Mr. Rapp was not a vested employee who was employed by Dexter by virtue of its concessions made during the administrative appeals process.  In the Denial of Appeal, HOA based its reasoning on how Mr. Rapp's non-inclusion on the Dexter List indicated that he was not entitled to benefits.  In one portion of the Denial of Appeal, it explains that "[i]n its October 26, 2017 letter, Claims and Appeals Management confirmed that it believed that Mr. Rapp was an employee of Dexter based on the information provided."

55.     The Denial of Appeal was based on the reasoning that:

Although the Pension Notice Mr. Rapp received in 1988 indicated that he was entitled to a pension benefit, the Dexter acquisition did not occur until 12 years later, providing Mr. Rapp with more than enough time to request and receive a lump sum payment of his Dexter Plan benefit after the Pension Notice was mailed. The Dexter Plan offered a lump sum distribution option, so Mr. Rapp may have received his Dexter Plan benefit in a lump sum before the Dexter List was created in 2001.

56.     HOA based its reasoning purely on Mr. Rapp's absence from the Dexter List without establishing why he was not on the Dexter List.  As such, HOA has waived or is estopped from arguing that Mr. Rapp was not a vested employee of Dexter with an interest in the Dexter Plan.  At a minimum, HOA should have informed him he was being omitted from the Dexter List so he could have protected

Case No.: 

his rights at that time if he believed, as he does, that he should have been included on the Dexter List.

57.     HOA had no basis whatsoever to assert that Mr. Rapp "may have received his Dexter Plan benefit in a lump sum before the Dexter List was created in 2001." It knew that 1099-R forms are issued to anyone receiving a pension payment and HOA never inquired or researched whether he ever had received one and certainly never proved that he had received one. Election forms for distributions are complicated and long and HOA should have had access to information that established Mr. Rapp never submitted election forms for pension benefits or that he ever made an election to receive his pension benefits.

*Surcharge Remedy*

58.     Plaintiffs are entitled to the equitable remedy of surcharge, i.e., to be made whole as a result of HOA breaching of its fiduciary duties to Plaintiffs, including compensatory damages for both actual harm caused by HOA's breach of fiduciary duties and the amount HOA has been unjustly enriched.

59.     As to compensatory damages, a beneficiary can pursue the remedy that will put the beneficiary in the position he or she would have attained but for the fiduciary's breach. Had it not been for HOA's breach, Plaintiffs would have obtained the pension benefits Plaintiffs are entitled to, namely the sum of at least $46,843, calculated as of June 29, 2018, plus interest, and a payment of at least $337 per month thereafter, beginning in July 2018. HOA breached its fiduciary duty by failing to maintain adequate records such that it would be clear that Mr. Rapp was entitled to his pension benefits.

Case No.:



60.    As to unjust enrichment, a fiduciary who gains a benefit by breaching his or her duty must return that benefit to the beneficiary.  HOA gained the benefit of retaining Mr. Rapp's contributions to the Plan.  Each time the liabilities under the Dexter Plan were transferred, the assets supporting the liabilities were transferred as well.  HOA received those transferred assets.  In breaching its fiduciary duty, HOA has attempted to retain the benefit of those assets and it must return any wrongly-obtained profits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that the Court grant the following relief against all Defendants:

1.    For all Plan benefits due and owing Plaintiffs, including the unpaid pension benefits of at least $46,843, calculated as of June 29, 2018, and at least $337 per month thereafter, beginning in July 2018;

2.    Alternatively, for equitable relief, including waiver, equitable estoppel and surcharge;

3.    For costs and reasonable attorneys' fees pursuant to 29 U.S.C. Section 1132(g);

4.    For pre-judgment and post-judgment interest on the principal sum, accruing from the date the obligations were incurred.  *See Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007) ("A district court may award prejudgment interest on an award of ERISA benefits at its discretion."); *Drennan v. General Motors Corp*., 977 F.2d 246, 253 (6th Cir. 1992); and

5.    For such other and further relief as this Court deems just and proper.

-19-



Dated:  June 29, 2018                    MᴄKENNON LAW GROUP PC


By:  _____
         ROBERT J. McKENNON
         SCOTT E. CALVERT
         NICHOLAS A. WEST
         Attorneys for Plaintiffs Theodore
         Rapp and Christy Rapp

