UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| THEODORE RAPP, ET AL | : | CIVIL CASE NO. |
| Plaintiffs, | : | 3:18-CV-01656 (JCH) |
| v. | : | |
| HENKEL OF AMERICA, ET AL | : | |
| Defendants. | : | SEPTEMBER 18, 2019 |

**RULING ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. NO. 64)**

## I.  INTRODUCTION

Plaintiffs Theodore Rapp and Christy Rapp ("the Rapps") bring this action against the defendant, Henkel of America, Inc. ("Henkel"), under the Employee Retirement Income Security Act of 1974 ("ERISA").  The Rapps assert claims of wrongful denial of pension benefits and breach of fiduciary duty.  See Compl. (Doc. No. 1) ¶¶ 37, 49.  Henkel has filed a Motion for Judgment on the Pleadings ("Motion") (Doc. No. 64).  For the reasons that follow, defendant's Motion is granted in part.

## II.  STANDARD OF REVIEW

In deciding a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), courts must "employ the same standard applicable to Rule 12(b)(6) motions to dismiss."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78 (2d Cir. 2015).  Therefore, courts "accept all factual allegations in the complaint as true and draw all reasonable inferences in [plaintiffs'] favor."  Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).  To survive a Rule 12(c) motion, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id.

## III.    FACTS

From 1974 through 1986, Mr. Rapp worked at the Dexter Corporation.  Dexter maintained a retirement pension plan for its employees (the "Dexter Plan") and through this plan Mr. Rapp acquired a deferred vested pension plan.  Compl. ¶¶ 8, 9.  On January 25, 1988, Mr. Rapp received a letter from Dexter's Human Resources ("Notification of Benefits") explaining that Mr. Rapp would be entitled to pension benefits under the Dexter Plan when he attained the age of 65.  The Notification of Benefits further stated that Mr. Rapp's first day of normal retirement would begin on December 1, 2006.  Id. ¶ 10.

In 2000, the Dexter Plan was transferred to Loctite, an affiliate of Henkel, following Loctite's acquisition of certain lines of business from Dexter.   The Dexter Plan was then renamed the Loctite/Dexter Pension Plan.  Id. ¶ 11.

On April 1, 2001, Loctite and Henkel merged the Loctite/Dexter Pension Plan into a separate retirement plan maintained by Henkel (the "Plan").  All remaining liabilities and assets of the Loctite/Dexter Plan, including the responsibility for the payment of Mr. Rapp's pension benefits under the Dexter Plan, were transferred to the Plan.  Id. ¶ 17.

On April 21, 2017, Mr. Rapp submitted a "Claim Initiation Form" to Henkel, seeking the pension benefits he acquired while working for Dexter.  Id. at 19.  Henkel denied Mr. Rapp's request.  The Claim Denial stated that Henkel had no record of Mr. Rapp's employment with Dexter.  It further stated that, "when Henkel acquired Dexter in

2

2001, a list was complied of all Dexter employees whose outstanding pension benefit obligations were transferred to Henkel. Henkel has confirmed that you are not on that list." Id. at 20. Mr. Rapp appealed the denial of his benefits. Id. ¶ 21.

In a letter dated March 16, 2018, Henkel's Benefit Plans Administrative Committee denied Mr. Rapp's appeal. Id. ¶ 23. The Denial of Appeal stated that the Committee acknowledged that Mr. Rapp had worked for Dexter and had been entitled to pension benefits under the Dexter Plan at some point in time. However, because the list that Henkel complied of all Dexter employees (the "Dexter List") did not include Mr. Rapp's name, Henkel had no record of Mr. Rapp's entitlement to pension benefits under the Plan. Id.

## IV. DISCUSSION

The Rapps have pled two counts under ERISA. In Count One, they seek to recover the benefits due to them under the Plan under section 502(a)(1)(B) of ERISA, section 1132(a)(1)(B) of title 29 of the United States Code. Id. ¶ 37. In Count Two, they allege breach of fiduciary duty and seek equitable relief under section 1132(a)(3). Id. ¶ 49. In response, Henkel argues that both claims are time barred. See Defendant's Memorandum in Support of Its Motion for Judgment on the Pleadings ("Deft.'s Mem. in Supp.") (Doc. No. 64-1) at 4, 6. Henkel further argues that the Rapps' breach of fiduciary claim is impermissibly duplicative of their claims in Count One. Id. at 8. Finally, Henkel argues that the action is barred by the doctrine of laches. Id. at 10.

A. <u>Waiver</u>

As a preliminary matter, the Rapps argue that Henkel waived the right to invoke the statute of limitations defenses by failing to assert them in the claim and appeal denial letters. Plaintiffs' Opposition to Defendant's Motion ("Pl.s' Opp.") (Doc. No. 81) at 7–11. This claim fails. Although the Second Circuit has held that the doctrine of wavier applies to an ERISA action, see <u>Lauder v. First Unum Life Ins. Co.</u>, 284 F.3d 375, 381 (2d Cir. 2002), it has so found under two circumstance not present here. In <u>Lauder</u>, First Unum, the plan administrator, "knew of Lauder's claim of disability, chose not to investigate it, and chose not to challenge it." <u>Id.</u> at 382. Instead, First Unum denied Lauder's request for disability on the grounds that she was not an eligible participant. <u>Id.</u> at 378. The Second Circuit, therefore, held that First Unum had waived its right to rely on lack of disability as a defense to Lauder's claim. <u>Id.</u> at 382.

First Unum's waiver of its defense of lack of disability is substantively different from Henkel's statute of limitations defense. Unlike First Unum, Henkel is not attempting to raise new substantive grounds for denying the Rapps' claim different from those raised during the administrative process. They are, instead, asserting a defense to a "judicial action," which "[o]ne would hardly expect a plan administrator" to assert "in the context of an administrative claim." <u>Kunsman v. Conkright</u>, 977 F. Supp. 2d 250, 263 (W.D.N.Y. 2013) ("[<u>Lauder</u>] is inapposite. <u>Lauder</u> involved an insurer's waiver of its defense of lack of disability. That is substantively different from a limitations defense to a judicial action."). Even more, the concerns identified by the court in <u>Lauder</u> are absent here. <u>Lauder</u> "raise[d] the concern that plan administrators like First UNUM will try the

4

easiest and least expensive means of denying a claim while holding in reserve another, perhaps stronger, defense should the first one fail." 284 F.3d at 382.  Here, there is no indication that Henkel engaged in these manipulative strategies.  The facts of the Complaint suggest that Henkel denied the Rapps' claim out of its belief that Rapp was not on the Dexter List and that Rapp was therefore not entitled to pension benefits under the Plan.  Compl. ¶¶ 20, 23.  See Gordon v. Deloitte & Touche, LLP Grp. Long Term Disability Plan, 749 F.3d 746, 753 (9th Cir.2014) ("While the doctrine of waiver may be applied to prevent insurers from denying claims for one reason, then coming forward with several other reasons after the insured defeats the first and to provide insurers with an incentive to investigate claims diligently, such an incentive is not needed when it comes to statutes of limitation defenses.").

Courts in the Second Circuit have also found that the doctrine of waiver applies when plan administrators attempt to assert limitation provisions contained within the respective ERISA plans.  See, e.g., Shutts v. First Unum Life Ins. Co., 310 F. Supp. 2d 489, 494 (N.D.N.Y. 2004).  Again, this is a substantively different claim than the one Henkel asserts.  Parties are free to waive the right to dispute timeliness of claims under contractual notice-of-claim provisions.  But this waiver theory does not extend to a defense in a judicial action, which exists outside the terms of the contract and which a plan administrator would not be expected to know.  See Kunsman v. Conkright, 977 F. Supp. 2d at 263.

While it is clear from Lauder and Shutts that the doctrine of waiver may apply in the ERISA context, the Second Circuit counseled that district courts should conduct a

5

"case-specific analysis" in deciding whether an insurer has waived a defense in an ERISA action. Lauder, 284 F.3d at 381. Under this case-specific analysis, the Rapps' waiver argument fails. The case at bar presents different facts than the cases in which courts in the Second Circuit have applied the waiver doctrine in ERISA actions. In fact, the Rapps have cited no case in which a court has found that a plan administrator waives statute of limitations defenses to a lawsuit by failing to assert them in claim decisions. See Witt v. Metropolitan Life Ins. Co., 772 F.3d 1269, 1280 (11th Cir. 2014) (noting the same). "[C]ourts addressing this issue have found that a defendant in an ERISA action may raise an affirmative statute of limitations defense even if it did not raise the defense during the administrative process." Paulus v. Isola USA Corp. Ret. Plan, 2014 WL 462367, at *5 (W.D. Wis. Feb. 5, 2014) (citing Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 520 (1st Cir. 2005); Upadhyay v. Aetna Life Ins. Co., 2014 WL 186709, at *2 (N.D. Cal. Jan. 16, 2014); Kunsman, 2013 WL 5631027, at *9)). The Rapps' waiver argument therefore fails.

    B.    Count One

In Count One, the Rapps allege that Henkel wrongfully denied them benefits owed to them under the Plan. Compl. ¶ 9. They seek to recover these benefits under section 1132(a)(1)(B) of title 29 of the United States Code, which states:

> A civil action may be brought -- (1) by a participant or beneficiary. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

In response, Henkel claims that this action is barred by the statute of limitations.

ERISA does not contain a limitations period for claims arising under section 1132(a)(1)(B). Instead, courts apply the most analogous state statutes of limitations. Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan, 572 F.3d 76, 78 (2d Cir. 2008). The District of Connecticut has held that Connecticut's six-year statue of limitations applies to claims under section 1132(a)(1)(B). Richards v. Gen. Elec. Co., No. 3:09–CV–00053 (DJS), 2011 WL 3651356, at *2 (D. Conn. Aug. 18, 2011) (citing Conn. Gen. Stat. § 52–576(a)).

The parties agree to the six-year statute of limitations. They further agree that a claim under section 1132(a)(1)(B) accrues when there is a clear repudiation of the benefits at issue. See Hirt v. Equitable Ret. Plan for Emps., Managers & Agents, 285 F. App'x 802, 804 (2d Cir. 2008). The parties' disagreement involves when the clear repudiation occurred. Henkel contends that a clear repudiation occurred as early as December 1, 2006, Mr. Rapp's normal retirement date. Def.'s Mem. in Supp. at 5. The Rapps contend that "there was never a clear repudiation made known to [them]" before the Claim Denial. Pls.' Mem. in Opp. at 12.

The Second Circuit has noted that, "[a]lthough the limitations period generally begins to run when a participant's application for benefits is denied," formal denial is not required. Hirt, 285 F. App'x at 804. The cases Henkel cites in its Memorandum of Support illustrate two circumstances under which a clear repudiation can occur absent formal denial of benefits. In Hirt, plaintiffs received a Summary Plan Document that constituted a clear repudiation of the employees' rights under the old plan. 285 F. App'x at 804. In Richards, the court found that clear repudiation occurred when the plaintiff

7

failed to receive payments from a pension plan that was to distribute the payments automatically upon plaintiff's retirement. 2011 WL 3651356, at *2. Clear repudiation can also be found when an employer informs a plan's beneficiaries of the employer's intent to alter benefits, see Levin v. Raynor, No. 03-CV-4697 (GBD), 2004 WL 2937825, *8 (S.D.N.Y. Dec. 17, 2004), or when a beneficiary receives "an informal letter denying benefits," Hirt v. Equitable Ret. Plan for Emps., Managers & Agents, 450 F. Supp. 2d 331, 333 (S.D.N.Y. 2006). Each of these cases demonstrates that clear repudiation occurs when rejection of the claim "is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application of benefits." Hirt, 285 F. App'x at 804.

Each of Henkel's arguments as to why the repudiation should have previously been known fail. First, Henkel argues that the Rapps' claim accrued on December 1, 2006, Mr. Rapp's normal retirement date. On this date, the Rapps became eligible to begin receiving normal retirement benefits. According to Henkel, "[w]hen no benefit was paid starting on that date, his claim accrued because he knew he was (allegedly) entitled to a benefit and none was paid." Def.'s Mem. in Supp. at 5. However, the notice outlining Mr. Rapp's pension benefits does not require collection of benefits on any date. Instead, the Notice speaks in strictly permissive terms.[1] See Ex. A (Doc. No. 64-2). As such, Henkel cannot claim that the Rapps' non-receipt of benefits upon Mr.

---

[1] Mr. Rapp received the "Notification of Pension Rights at Termination" dated January 25, 1988 from Dexter's Director of Human Resources. Compl. ¶ 4. The notice states in part: "When you attain age 65, you will be eligible for the pension indicated above if you are single or if you are married and elect the life annuity option . . . You may apply for your Early Retirement Benefit at any time between age 55 and 65 . . ." Ex. A (Doc. No. 64-2).

8

Rapp's retirement constituted repudiation. Cf. Richards, 2011 WL 3651356, at *2 (finding that the claim accrued "when [the employer] allegedly failed to make the payment required upon termination of [plaintiff's] employment") (emphasis added).

Next, Henkel argues that the Rapps' claim accrued on June 1, 2012, the date Mr. Rapp turned 70.5 years old, and was therefore "required to begin taking benefit payments." Def. Mem. in Supp. at 5. This argument misstates the applicable law. Section 401(a)(9)(C) of the Internal Revenue Code (to which Henkel cites) defines the "Required beginning date" as "April 1 of the calendar year following the later of – (I) the calendar years in which the employee attains age 70 ½ or, (II) the calendar year in which the employee retires." 26 U.S.C. § 401(a)(9)(C). Mr. Rapp turned 70.5 years old on May 24, 2012. Therefore, Mr. Rapp's required beginning date was April 1, 2013. Under Henkel's theory, then, the Rapps' deadline to file was April 1, 2019 – nine months before they filed their complaint.

The Motion before the court is one for a judgment on the pleadings. Drawing all inferences in the light most favorable to the Rapps, the non-moving party, it is plausibly alleged that the Rapps did not have knowledge of a clear repudiation until the Claim Denial in 2017. Compl. ¶ 20. There is nothing on the face of the Complaint that the Rapps received notice (even informal notice) of repudiation before they received the Claim Denial. And because payments were not automatic, see Ex. A, the failure to receive benefits following Mr. Rapp's retirement did not constitute a clear repudiation. Based on the facts plausibly alleged, the Rapps would have no reason to either investigate, or know of, their exclusion from the Dexter List. Consequently, absent

9

additional information, the court cannot conclude that plaintiffs reasonably should have known of a clear repudiation of benefits before they received actual notice through the Claim Denial.

    C.    <u>Count Two</u>

In Count Two, the Rapps assert that Henkel breached its fiduciary duty by failing to maintain a proper system to ensure that records were maintained, and benefits distributed. Compl. ¶¶ 46, 47. The Rapps seek equitable relief including waiver, estoppel, and surcharge under section 1132(a)(3)(B) of title 29 of the United States Code. Id. ¶ 42. Section 1132(a)(3)(B) states: "A civil action may be brought (3) by a participant, beneficiary, or fiduciary . . . (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B).

Henkel argues that, to the extent that Count Two relates to the creation of the Dexter List, Count Two is barred by the statute of limitations. Def.'s Mem. in Supp. at 6. Henkel next argues that, to the extent that Count Two relates to Henkel's handling of the Rapps' benefit claim, Count Two "run[s] afoul of settled law precluding such duplicative breach of duty claims." Id. at 8.

    1.    Statute of Limitations

Unlike claims brought under section 1132(a)(1)(B), <u>see</u> <u>supra</u> § IV(B), ERISA contains a specific limitations provision for breach of fiduciary duty claims. The parties agree that, for the purposes of this case, the statute of limitations for the Rapps' breach of fiduciary duty claim is "six years after the date of the last action which constituted a

10

part of the breach or violation." 29 U.S.C. § 1113(1)(A). But once again, the parties disagree as to when the six-year clock began to run. Henkel argues that any alleged breach of fiduciary duty as to the creation of the Dexter List occurred no later than 2001, making the Rapps' claim more than ten years too late. Def.'s Mem in Supp. at 7.

In response, the Rapps contend that Henkel's failure to maintain adequate records constitutes an "ongoing violation." Pls.' Mem. in Opp. at 16. The court disagrees. In <u>Novella v. Westchester County</u>, 661 F.3d 128, 146 (2d Cir. 2011), the Second Circuit considered the applicability of the "continuing violation" doctrine in ERISA cases. It concluded:

> We do not adopt the continuing-violation theory. We think that method is appropriate in ERISA cases, as elsewhere, only where separate violations of the same type, or character, are repeated over time. Usually, these cases are marked by repeated decision-making, of the same character, by the fiduciaries. But it is not as clear a fit in cases where, as here, the plaintiff's claims are based on a single decision that results in lasting negative effects.

<u>Id.</u> (internal quotations and citations omitted). Although <u>Novella</u> involved a miscalculation of benefits claim brought under section 1132(a)(1)(B), district courts have applied its analysis to breach of fiduciary claims. See <u>Kunsman</u>, 977 F. Supp. 2d at 262; <u>Janese v. Scrufari</u>, No. 09–CV–593 (JTC), 2013 WL 5503953, *6 (W.D.N.Y. Oct. 2, 2013).

The court does not believe that the continuing violation claims is applicable to the facts of the instant case. Drawing all reasonable inferences in the Rapps' favor, the claims pled in Count Two contain no specific allegations indicating separate, repeating violations of Henkel's fiduciary duty. The Rapps' claims in Count Two are not

11

"inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau County, Inc., 558 F.Supp.2d 378, 400 (E.D.N.Y. 2008) (quoting Miele v. Pension Plan of New York State Teamsters Conference Pension & Ret. Fund, 72 F. Supp. 2d 88 (E.D.N.Y. 1999))  Rather, the claims in Count Two are based on two distinct events: the improper preparation of the Dexter List in 2001, and the denial of benefits in 2017.  Therefore, the Rapps cannot take advantage of the continuing violations doctrine.  Henkel's Motion for Judgment on the Pleadings is granted as to Count Two, insofar as it applies the improper preparation of the Dexter List.

### 2. Duplicity

Henkel next argues that, to the extent Count Two is based on the handling of the Rapps' 2017 benefit claim, it is impermissibly duplicative of Count One's section 1132(a)(1)(B) claim.  Def.'s Mem. in Supp. at 8.  The Rapps respond that Henkel relies on an outdated view of the law.  Pls.'s Mem. in Opp. at 16.

The interplay between section 1132(a)(1)(B) (Count One) and section 1132(a)(3) (Count Two) "is the subject of much debate."  Shore v. Procter & Gamble Health and Long-Term disability Plan, No. 2:18-CV-2294, 2018 WL 5045193, at *3 (D. Kan. Oct. 17, 2018).  The Supreme Court first addressed the issue in Varity Corp. v. Howe, 516 U.S. 489 (1996).  In Varity, upon which Henkel chiefly relies, the Court held that section 1132(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims . . ." Id. at 512.

Section 1132(a)(3), on the other hand, acts as a "catchall" provision or "safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." Id. Following Varity, "lower courts almost uniformly concluded that, if a claimant sought recovery of benefits due under [section 1132(a)(1)(B)], there was an adequate, non-equitable remedy that barred the claimant from seeking equitable relief under [section 1132(a)(3)]." Shore, 2018 WL 5045193, at *3 (collecting cases); see also, Whelehan v. Bank of America Pension Plan for Legacy Companies-Fleet-Traditional Benefit, 621 Fed. App'x. 70, 72 (2d Cir. 2015) ("Similarly, to the extent Whelehan may have intended to invoke ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), that section may not be relied on by a claimant to pursue relief—in this case, pension benefits—available under a separate ERISA provision.") (summary order).

The Rapps contend that Henkel's argument, which relies on Varity and Whelehan, ignores the doctrinal shift that occurred when the Supreme Court revisited the issue in CIGNA Corporation v. Amara, 563 U.S. 421 (2011). In Amara, the Supreme Court addressed a claim by a pension class against a plan administrator-employer where the class alleged the administrator had failed to provide sufficient notice of changes to their benefits. Id. at 424. The district court had previously found for the plaintiffs. Id. at 428. As a remedy for the violations, the district court reformed the plan to compensate the injured employees. Id. at 433-34. The district court cited section 1132(a)(1)(B) as the legal authority for that remedy. Id. at 434. On appeal, the Supreme Court held that section 1132(a)(1)(B) does not permit the type of relief the

13

district court granted.  Id. at 436 ("The statutory language speaks of 'enforc[ing]' the 'terms of the plan,' not of changing them.") (quoting 29 U.S.C. § 1132(a)(1)(B)) (emphasis in original).  The Supreme Court further concluded, however, that the remedies the district court ordered were "within the scope of the term 'appropriate equitable relief' in § [1132](a)(3)."  Id. at 442.  The Supreme Court remanded the case for further consideration on the question of equitable remedies, and discussed several forms that might be appropriate, including reformation, injunction, estoppel, and surcharge.  Id. at 438–442.  "Although this discussion of equitable relief was arguably dictum, several lower courts have interpreted Amara as requiring broader analysis of whether a claim for recovery of benefits under § [1132](a)(1)(B) precludes a simultaneous claim for equitable relief under § [1132](a)(3)."  Shore, 2018 WL 5045193, at *3 (collecting cases).

The Second Circuit addressed the issue of duplicative claims for relief in New York State Psychiatric Association, Inc. v. UnitedHealth Group, 798 F.3d 125 (2d Cir. 2015).  The plaintiff in NYSPA alleged that the plan administrator had breached its fiduciary duty in improperly administrating its health insurance plan.  Id. at 130.  The plaintiff brought claims under both section 1132(a)(3) and section 1132(a)(1)(B).  Id. at 128.  The plan administrator, like Henkel, argued that the plaintiff's section 1132(a)(3) claim should be dismissed because "adequate relief" for the alleged breach of fiduciary duty was available under section 1132(a)(1)(b).  Id. at 133.  The Second Circuit disagreed:

> [I]t is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § [1132](a)(1)(B) alone will provide [Denbo] a sufficient

14

remedy. In other words, it is too early to tell if his claims under § [1132](a)(3) are in effect repackaged claims under § [1132](a)(1)(B). We therefore hold that the District Court prematurely dismissed Denbo's claims under § [1132](a)(3) on the ground that § [1132](a)(1)(B) provides Denbo with adequate relief.

Id. at 134. The Second Circuit distinguished its holding from its earlier decision in Nechis v. Oxford Health Plans, Inc., 421 F.3d 96 (2d Cir. 2005), where the Court "affirmed a dismissal of the plaintiff's § [1132](a)(3) claims because it was clear that 'any harm to [the plaintiff could] be compensated by money damages' entirely and she '[could not] satisfy the conditions required for injunctive relief.'" NYSPA, 798 F.3d at 135 (quoting Nechis, 421 F.3d at 103).

The case at bar is more similar to NYSPA than to Nechis, that is, it is not clear at this stage of the litigation that monetary benefits under section 1132(a)(1)(B) alone would provide the Rapps with a sufficient remedy. Although the Rapps may not "repackage" their section 1132(a)(1)(B) claim to obtain duplicative relief, the court cannot conclude at this stage of the litigation that the two claims are indeed duplicative. See Negron v. Cigna Health and Life Ins., 300 F. Supp. 3d 341, 362 (D. Conn. 2018) ("[A]t the motion to dismiss phase, courts generally allow a party to pursue claims under both ERISA § 502(a)(1) and § 502(a)(3), because it is not yet clear that monetary benefits under Section 502(a)(1)(B) will provide plaintiffs with a sufficient remedy . . . The Court will deny the motion to dismiss on this basis.") (citing NYSPA, 798 F.3d at 134). The Rapps seek the equitable remedy of estoppel and contend that Henkel is estopped from arguing that Mr. Rapp was not a vested employee who was employed by Dexter, or that Mr. Rapp had no vested pension benefits under the Plan. Compl. ¶ 53,

15

54. On the face of the Complaint, it is unclear whether this estoppel claim is completely duplicative of the Rapps' claim for monetary relief, especially as it applies to future breaches. See NYSPA 798 F.3d at 135 ("[T]o the extent [the plaintiff] seeks . . . seeks to enjoin [the defendant] from committing future breaches, the relief sought would count as "equitable relief" under § [1132](a)(3)."). Henkel's Motion for Judgment on the Pleadings on Count Two is therefore denied, insofar as it applies to Henkel's handling of the Rapps' 2017 benefit claim.

D. Laches

Finally, Henkel argues that the doctrine of laches bars the Rapps' claims. Def.'s Mem. in Supp. at 10. This argument fails. As Henkel notes, "[l]aches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." Emigrant Mortg. Co. v. Crismara, No. 3:05-CV-1772 (JCH), 2008 WL 2551039, at *11 (D. Conn. June 23, 2008). The Rapps plausibly contend that they were not on notice of the repudiation of their benefits until the 2017 Claim Denial. See supra § IV(B). Therefore, "it is not yet possible to determine if the plaintiffs intentionally slept on their rights." Custer v. Southern New England Telephone Co., No. 3:05-CV-1444 (SRU), 2008 WL 222558, at *5 (D. Conn. Jan. 25, 2005). Henkel's argument fails on the first prong alone.

**V. CONCLUSION**

For the foregoing reasons, the defendants' Motion for Judgment on the Pleadings (Doc. No. 64) is **GRANTED IN PART**. The Motion for Judgment on the Pleadings is **DENIED** as to Count One and **DENIED** as to Count Two insofar as it pertains to

16

Henkel's handling of the Rapps' 2017 benefit claim. The Motion for Judgment on the Pleadings is **GRANTED** insofar as it applies to the improper preparation of the Dexter List.

**SO ORDERED.**

Dated this 18th day of September 2019 at New Haven, Connecticut.

                                                    /s/ Janet C. Hall
                                                    Janet C. Hall
                                                    United States District Judge